UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| VICTOR CASTRO,<br>　　　Plaintiff, | :<br>:<br>:　　CASE NO. 3:20-cv-1173 (MPS)<br>: |
| v. | :<br>: |
| JIMMY BAEZ, et al.,<br>　　　Defendants. | :<br>:　　AUGUST 24, 2020<br>: |

**INITIAL REVIEW ORDER**

Plaintiff Victor Castro, incarcerated at the Northern Correctional Institution in Somers, Connecticut, filed this case under 42 U.S.C. § 1983. The plaintiff names ten defendants: Captain Sanchez, Lieutenant Davis, and Correctional Officers Jimmy Baez, Michalowski, Annear, Mann, Cyr, Sanchez, and Melendez. He contends that the defendants assaulted him, punished him for not confessing to criminal activity in the housing unit, and denied him a fair hearing. The plaintiff seeks damages, declaratory relief and expungement of his last five disciplinary reports.

The Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. This requirement applies to all prisoner filings regardless whether the prisoner pays the filing fee. *Nicholson v. Lenczewski*, 356 F. Supp. 2d 157, 159 (D. Conn. 2005) (citing *Carr v. Dvorin*, 171 F.3d 115 (2d Cir. 1999) (per curiam)). Here, the plaintiff is proceeding *in*

*forma pauperis.*

Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a plausible right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted).

"Although courts must interpret a pro se complaint liberally, the complaint will be dismissed unless it includes sufficient factual allegations to meet the standard of facial plausibility." *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations omitted).

I.  <u>Allegations</u>

The incidents underlying this action occurred while the plaintiff was confined at MacDougall-Walker Correctional Institution. On April 1, 2020, defendant Michalowski released the plaintiff from the shower while defendant Baez was finishing an inspection of the plaintiff's cell. ECF No. 1 ¶ 26. When he reached his cell, the plaintiff saw that defendant Baez had removed a box from the cell. *Id.* ¶ 27. The box contained water which had spilled in the entrance to the cell. *Id.* ¶ 28.

While standing directly outside his cell with defendant Baez, the plaintiff asked how he was to clean the spill. *Id.* ¶ 29. When defendant Baez did not respond, the plaintiff repeated the question. *Id.* ¶¶ 30-31. Defendant Baez said that he only moved the box outside the cell. *Id.* ¶

32. From the bottom tier, defendant Annear told the plaintiff to use his sheets to clean the spill. *Id.* ¶ 33. The plaintiff told defendant Baez that he needed a mop because there was too much water. *Id.* ¶ 34. Defendant Baez merely made a face as if there was nothing he could do. *Id.* ¶ 35.

The plaintiff tried to get the attention of defendant Michalowski. *Id.* ¶ 36. He felt he had a rapport with defendant Michalowski and thought he could get defendant Michalowski to give him a mop. *Id.* Defendant Baez became impatient and pushed the plaintiff into his cell. *Id.* ¶ 37. The plaintiff began to lose his footing on the wet floor. *Id.* ¶ 38. When defendant Baez realized this, he tried to grab the plaintiff. *Id.* Defendant Baez grabbed the towel in the plaintiff's hand and, to keep from falling, the plaintiff grabbed defendant Baez's hand that was holding the towel. *Id.* ¶ 39.

When the plaintiff regained his balance, he asked defendant Baez why he had pushed the plaintiff. *Id.* ¶ 40. The plaintiff alleges that defendant Baez became nervous and "tackle[d] Plaintiff Castro into the cell." *Id.* ¶ 41. The plaintiff submitted. *Id.* ¶ 42. He lay face-down on the floor while defendant Baez held his hands behind his back. *Id.* ¶ 44. He was secured before any other defendant entered the cell. *Id.* ¶ 45.

Defendant Michalowski entered the cell and knelt beside the plaintiff to assist defendant Baez. *Id.* ¶ 46. The plaintiff considered this action unnecessary as the plaintiff was not resisting. *Id.* Defendant Baez appeared shocked when defendant Michalowski told him he had called a Code Orange. *Id.* ¶ 47.

Defendant Annear entered the cell and began striking the plaintiff. *Id.* ¶¶ 48-49. Defendant Annear punched the plaintiff's side and kneed his head and face several times. *Id.* ¶

3

50.  The plaintiff moved his hands to protect his head and face.  *Id.* ¶ 51.  While he was doing this, defendant Robinson got on the plaintiff's back and pressed his knee against the plaintiff's neck pinning him to the floor.  *Id.*  The plaintiff's eyes were poked.  *Id.* ¶ 52.  Struggling to see and breathe, the plaintiff put his hands near his face for protection.  *Id.* ¶ 53.  The plaintiff's hands were forced behind his back, leaving his face unprotected from the continuing assault.  *Id.* ¶ 54.

Defendant Robinson held the plaintiff down while defendant Annear began to cut his leg.  *Id.* ¶ 55.  When additional staff entered the housing unit, defendant Annear stopped cutting the plaintiff.  *Id.* ¶ 56.  Lieutenant Masshorn entered the cell and ordered the plaintiff handcuffed.  *Id.* ¶ 57.  Lieutenant Scagnalia ordered officers to stand the plaintiff up.  *Id.* ¶ 58.  He also ordered that a veil mask be placed on the plaintiff's head.  *Id.* ¶ 60.  The plaintiff was placed in segregation and his injuries were photographed.  *Id.* ¶¶ 62-65.

The plaintiff received a disciplinary report for assault on staff.  *Id.* ¶ 67.  Defendant Melendez was the disciplinary investigator.  *Id.* ¶ 68.  The following day, the unit manager, defendant Salius, visited the plaintiff to hear the plaintiff's version of events.  *Id.* ¶¶ 69-70.  Defendants Salius and Melendez told the plaintiff that the video surveillance footage did not support him "either way."  *Id.* ¶ 71.  Defendant Melendez tried to persuade the plaintiff to plead guilty in exchange for lesser sanctions, saying it was the plaintiff's word against that of a correctional officer and the plaintiff should know what would happen.  *Id.* ¶ 74.  Defendant Melendez told the plaintiff that in his years of experience, no inmate had prevailed in this situation.  *Id.* ¶ 75.

The plaintiff elected to have a hearing and pleaded not guilty.  *Id.* ¶ 76.  Defendant

Sanchez was named the plaintiff's advisor. *Id.* ¶ 77.  Defendant Sanchez spoke with the plaintiff about the case. *Id.* ¶ 78.  Defendant Davis was the hearing officer. *Id.* ¶ 79.  The only evidence submitted at the hearing was defendant Baez's report. *Id.* ¶ 80.  The report repeated the statements in the disciplinary report verbatim. *Id.* ¶ 81.  Defendant Melendez submitted the report as the facts of the case. *Id.* ¶ 82.  Defendant Sanchez did not assist the plaintiff at the hearing. *Id.* ¶ 83.  Defendant Melendez falsely stated that the plaintiff had admitted assaulting defendant Baez. *Id.* ¶ 85.  Defendant Davis admitted that he had not reviewed any other evidence. *Id.* ¶ 86.  Defendant Davis dismissed the plaintiff's version of events without explanation and found him guilty. *Id.* ¶¶ 87-88.

The plaintiff's appeal was denied. *Id.* ¶ 89.  The plaintiff filed grievances against defendant Annear which were denied. *Id.* ¶ 90.  The plaintiff filed a grievance against defendant Robinson but received no response. *Id.* ¶ 91.  The plaintiff submitted numerous requests to the medical department complaining about the actions of defendants Robinson and Annear and seeking mental health treatment. *Id.* ¶¶ 92-93.

On April 17, 2020, defendant Salius offered to cancel the plaintiff's transfer to Northern Correctional Institution and defer the disciplinary ticket if the plaintiff would provide him information. *Id.* ¶ 98.  The plaintiff said he had been focused solely on going home before the April 1 incident and complained that the situation was wrong. *Id.* ¶ 99.  Defendant Salius told the plaintiff that he knew how to make things right. *Id.* ¶ 100.  The plaintiff stated that he had lost his chance for early release so it did not matter where he was confined. *Id.* ¶ 101.  Captain Salius then gave the plaintiff his Security Risk Group ("SRG") Program regression papers and said he would be sent to Northern Correctional Institution on May 1, 2020. *Id.* ¶ 102.

II.     Analysis

The plaintiff asserts four claims: (1) defendants Baez, Annear, and Robinson used excessive force against him and defendants Michalowski, Cyr, and Mann failed to intervene to protect him from harm; (2) defendant Salius sabotaged his parole in retaliation for his refusal to confess to criminal activity in the housing unit; (3) defendants Sanchez, Melendez, and Davis denied him due process at the disciplinary hearing; and (4) the defendants are responsible for his transfer to Northern Correctional Institution where he must be handcuffed behind his back during the one hour recreation period, exacerbating his injuries.

A.     Excessive Force

The plaintiff first alleges that defendants Baez, Annear, and Robinson used excessive force against him. The "core judicial inquiry" in analyzing an excessive force claim is not "whether a certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 34, 37 (2010) (per curiam). To evaluate the defendant's conduct, the court considers various factors including: the extent of the injuries and the mental state of the inmate; "the need for application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendant[]; and any efforts by the defendant[] to temper the severity of a forceful response." *Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003) (quoting *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993) (internal quotation marks omitted). In addition, the plaintiff must show, objectively, that the defendant's actions violated "contemporary standards of decency," which will always occur if the use of force is malicious. *Blyden v. Mancusi*, 186 F.3d 252, 262-63 (2d Cir. 1999) (internal quotation marks omitted)

6

(citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).

The plaintiff alleges that defendant Baez tackled him to cover up his error in pushing the plaintiff on the wet floor.  He contends that he was not resisting at any time during the assault; any movement was an attempt to protect his face and head.  The plaintiff further alleges that defendant Annear cut his leg without cause and stopped cutting him only when other staff approached.  Crediting the plaintiff's allegations, as the Court must on initial review, the Court finds that the plaintiff has alleged facts suggesting that the force was not necessary and was used maliciously.  Thus, he states a plausible claim for use of excessive force against defendants Baez, Annear, and Robinson.

B.   Failure to Intervene or Protect

The plaintiff next alleges that defendants Michalowski, Cyr, and Mann were present during the use of force but did not intervene to protect him.  A correctional officer's failure to intervene when an inmate is attacked can constitute a violation of the inmate's Eighth Amendment rights.  *See Davidson v. Cannon*, 474 U.S. 344, 348 (1986).  "[T]he question whether a defendant had a realistic chance to intercede will turn on such factors as the number of officers present, their relative placement, the environment in which they acted, the nature of the assault, and a dozen other considerations."  *Figueroa v. Mazza*, 825 F.3d 89, 107 (2d Cir. 2016).  No single factor is dispositive.  "The essential inquiry is whether, under the circumstances actually presented, an officer's failure to intervene permits a reasonable conclusion that he became a 'tacit collaborator' in the unlawful conduct of another."  *Id.* at 107-08; *see Rosen v. City of New York*, 667 F. Supp. 2d 355, 360 (S.D.N.Y. 2009) (failure to intervene claim cognizable where officer had adequate time to assess serious threat against inmate and realistic

7

opportunity to protect inmate without risk to himself but failed to act).

The plaintiff alleges that the assault occurred in his cell.  He alleges that defendants Michalowski, Cyr, and Mann were present but does not indicate whether they were in the cell along with the plaintiff and the three officers assaulting him.  He does not indicate how long the assault lasted or when these defendants arrived at the cell.  The facts alleged are insufficient to enable the Court to evaluate the factors listed above.  As the excessive force claim is proceeding, however, the Court will order service on this claim for further development of the record to ascertain whether these defendants had a realistic opportunity to intervene.

       C.       <u>Due Process</u>

The plaintiff contends that he was denied due process at the disciplinary hearing because defendant Melendez made a false statement, defendant Sanchez provided no assistance, and defendant Davis did not review all available evidence.

To state a claim for violation of his right to procedural due process, the plaintiff must allege facts showing that he had a protected liberty interest and that he was deprived of that interest without being afforded due process of law.  *See Walker v. Fischer*, 523 F. App'x 43, 44 (2d Cir. 2013) (citing *Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001)).  The Due Process Clause, standing alone, generally does not create a protected liberty interest in conditions of confinement as long as the conditions are "within the normal limits or range of custody which the conviction has authorized the State to impose."  *Meachum v. Fano*, 427 U.S. 215, 225 (1976) (finding no protected liberty interest to be free from intrastate prison transfer, even to a maximum security facility, because prison officials have discretion to transfer prisoners among correctional facilities "for whatever reason or for no reason at all").  However, there are

circumstances under which a state statute, policy, or regulation can create a protected liberty interest relating to conditions of confinement.

In *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court held that a liberty interest warranting due process protection "will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . nonetheless imposes an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484. Thus, to assess the plaintiff's claim, the Court must determine whether the sanctions imposed at the disciplinary hearing constitute an atypical and significant hardship. The plaintiff does not indicate what sanctions were imposed. Thus, he fails to allege facts to support a plausible due process claim.

The plaintiff states that he was regressed in the SRG Program and returned to Northern Correctional Institution. His due process claim, however, is directed to the disciplinary hearing on the charge of assault on staff. The plaintiff alleges no facts suggesting that classification issues were considered at the hearing. Further, prison directives indicate that a guilty finding for assault on staff results in review for Phase 1 placement in the SRG Program, Department of Correction Administrative Directive 6.14, section 11(C), available at portal.ct.gov/DOC/AD/AD-Chapter-6, and decisions on phase placement are made by the SRG Review Committee, *id.* Chapter 6, section 7(C). Thus, the plaintiff's regression cannot support his due process claim against defendants Sanchez, Melendez, and Davis. The due process claim is dismissed without prejudice. The plaintiff may file an amended complaint to reassert this claim if he can allege facts showing that the sanctions imposed on the charge of assault on staff constitute an atypical

9

and significant hardship.

### D. Retaliation

The plaintiff next asserts a retaliation claim against defendant Salius based on his regression in the SRG Program. The plaintiff alleges in his statement of facts that defendant Salius offered to rescind the regression if the plaintiff would provide "substantial and vital information." ECF No. 1 ¶ 98. In his statement of the claim, the plaintiff alleges that he was regressed because he refused to confess to criminal activity. ECF No. 1 at 2 ¶ B.

To state a cognizable First Amendment retaliation claim, the plaintiff must allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015) (quoting *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009) (internal quotation marks omitted)).

The Second Circuit has held that prisoners have a First Amendment right not to provide information, truthful or false, to prison officials. *See Burns v. Martuscello*, 890 F.3d 77, 93 (2d Cir. 2018). In analyzing this issue, the Second Circuit distinguished "the widespread practice of conditioning pleas or other favorable prosecutorial treatment on the provision of information." *Id.* The court explained that "the government may withdraw a benefit—by, for example, refusing to lessen charges where the would-be informant declines to offer information—but may not impose punishment at random." *Id.*

The plaintiff alleges that defendant Salius offered to rescind the regression if the plaintiff would provide information or a confession. The plaintiff declined and the regression was not rescinded. Thus, the defendant "withdr[e]w a benefit," but did not "impose punishment at

10

random."  The plaintiff has not alleged facts meeting the requirement for a prisoner retaliation claim.  The claim is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

### E. Conditions of Confinement

Finally, the plaintiff challenges his conditions of confinement at Northern Correctional Institution.  He alleges only that he must attend the one-hour recreation period with his hands cuffed behind his back.  None of the defendants, however, are alleged to work at Northern Correctional Institution.  Thus, no defendant is responsible for his conditions of confinement there.  In addition, as explained above, the named defendants are not the officials responsible for the decision to regress the plaintiff in the SRG Phase Program, which resulted in his transfer.

If the plaintiff were to amend his complaint to include a defendant responsible for his current conditions of confinement, the defendant would be improperly joined in this action.  Federal Rule of Civil Procedure 20 permits joinder of multiple defendants in one action only if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences, and any question of law or fact common to all defendants will arise in the action."  Fed. R. Civ. P. 2(a)(2).  "What will constitute the same transaction or occurrence under the first prong of Rule 20(a) is approached on a case by case basis."  *Kehr ex rel. Kehr v. Yamaha Motor Corp., U.S.A.*, 596 F. Supp. 2d 821, 826 (S.D.N.Y. 2008) (citation omitted).  As the Second Circuit has observed in the Rule 13 context, whether a counterclaim arises out of the same transaction as the original claim depends upon the logical relationship between the claims and whether the "essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit."  *Harris v. Steinem*,

11

571 F.2d 119, 123 (2d Cir. 1978).

The plaintiff alleges that the handcuffing requirement exacerbates his injuries. The plaintiff described his injuries from the assault as a cut on his leg and injuries about his head and face. He does not allege any injury to his arms that would be affected by the handcuffing requirement. Further, a decision on the constitutionality of the plaintiff's current conditions of confinement does not share a common question of law or fact with the other claims in this case and should be pursued in a separate action. *See Wilson v. McKenna*, No. 3:12-cv-1581(VLB), 2015 WL 1471908, at *6 (D. Conn. Mar. 31, 2015) (advising plaintiff that improperly joined claims must be pursued in separate actions). The Court may sever and dismiss improperly joined claims. *See* Fed. R. Civ. P. 21 (permitting the court to drop a party or sever a claim where the parties have been misjoined). Accordingly, the plaintiff's conditions of confinement claim is severed and dismissed without prejudice to inclusion in a new lawsuit naming proper defendants.

III. Conclusion

The due process claim against defendants Sanchez, Melendez, and Davis is **DISMISSED** without prejudice pursuant to 28 U.S.C. § 1915A(b)(1). The plaintiff may file an Amended Complaint to reassert this claim if he can allege facts showing that the sanctions imposed at the disciplinary hearing constituted an atypical and significant hardship.

The retaliation claim against defendant Salius is **DISMISSED** without prejudice pursuant to 28 U.S.C. § 1915A(b)(1). The conditions of confinement claim is severed and **DISMISSED** without prejudice to refiling in a new lawsuit.

The case will proceed on the claims for use of excessive force against defendant Baez, Annear, and Robinson, and failure to intervene or protect against defendants Michalowski, Cyr,

and Mann.

The court enters the following additional orders.

(1) **The Clerk shall** verify the current work addresses for defendants Baez, Annear, Robinson, Michalowski, Cyr, and Mann with the Department of Correction Office of Legal Affairs, mail a waiver of service of process request packet containing the Complaint and this Order to each defendant at the address provided within **twenty-one (21) days** of this Order, and report to the court on the status of the waiver request on the thirty-fifth day after mailing. If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on the defendant in his or her individual capacity and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(2) **The Clerk shall** prepare a summons form and send an official capacity service packet to the U.S. Marshal Service. The U.S. Marshal Service is directed to effect service of the Complaint and this Order on defendants Baez, Annear, Robinson, Michalowski, Cyr, and Mann in their official capacities at the Office of the Attorney General, 165 Capitol Avenue, Hartford, CT 06106, within **twenty-one (21) days** from the date of this order and to file a return of service within thirty (30) days from the date of this order.

(3) T**he Clerk shall** send the plaintiff a copy of this Order.

(4) **The Clerk shall** send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(5) The defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent. If they choose

13

to file an answer, they shall admit or deny the allegations and respond to the cognizable claims identified above. They also may include all additional defenses permitted by the Federal Rules.

(6) Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within **seven months (210 days)** from the date of this order. Discovery requests shall not be filed with the court.

(7) All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this order.

(8) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9) If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. The plaintiff must give notice of a new address even if he is incarcerated. The plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If the plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address. The plaintiff should also notify the defendants or the attorney for the defendants of his new address.

(9) The plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court. The plaintiff is advised that the Program may be used only to file documents with the court. As local court rules provide that discovery requests are not filed with the court, discovery requests must be served on defendants' counsel by regular mail.

(10)     The Clerk shall immediately enter the District of Connecticut Standing Order Re: Initial Discovery Disclosures concerning cases initiated by self-represented inmates and shall send a copy to the plaintiff.

**SO ORDERED** this   24th day of August 2020 at Hartford, Connecticut.

/s/
Michael P. Shea
United States District Judge